WILLIAM C. HARPER v. SUSAN P. HILL et al.

1. CHANCERY: JURISDICTION: WILL NOT ENJOIN EXECUTION IN EJECTMENT, AT
THE INSTANCE OF A STRANGER HOLDING PARAMOUNT TITLE.—A court of equity
will not, at the instance of the holder of the paramount legal title, restrain the
execution of a writ of *habere facias possessionem* emanating from a judgment
in ejectment between other parties : in such a case, the complainant not being
at all affected by the proceedings in ejectment to which he was no party, may
recover possession in another action of ejectment against the person in pos-
session.
2. SAME : SAME: DEFENDANT IN EJECTMENT NOT ENTITLED TO INJUNCTION TO
PROTECT TITLE OF A STRANGER.—The defendant in an action of ejectment,
against whom judgment has been entered, cannot restrain the execution of it
by attorning to the holder of the paramount legal title, and receiving possession
from him.
3. SAME: PLEADING AND PRACTICE: EXHIBITS: WHEN INCONSISTENT WITH THE
BILL.—The bill alleged satisfaction of a judgment at bar, upon the averment
that the proceeds of a sale made, under an execution emanating therefrom, had
never been appropriated to the payment of any other judgment against the
defendant : the record of the judgment, which was made an exhibit to the bill,
showed the contrary: *held,* on demurrer to the bill, that, in the absence of all
explanation in the bill of the statement in the record, the court must consider
that the appropriation had been made as stated in the exhibit.
4. EXECUTION : WHEN ISSUED AFTER DEATH OF DEFENDANT ONLY VOIDABLE.—
An execution issued and tested after the death of the defendant, and without
revivor, is not for that reason absolutely void, but merely voidable. See *Smith
et al.* v. *Winston et al.,* 2 How. 601 ; *Harrington* v. *O'Reilly,* 9 S. & M. 216 ;
*Doe ex dem Shelton* v. *Hamilton,* 23 Miss. R. 497.
5. SAME : VOIDABLE EXECUTION GOOD UNTIL SET ASIDE.—A voidable execution, is
one which, upon a proper proceeding, can be quashed or avoided; but until
this is done it is deemed valid, and a sale made under passes the title.
6. SAME: WHEN SALE UNDER GOOD : SALE OF LAND UNDER EXECUTION TESTED
AFTER THE DEATH OF THE DEFENDANT.—The title of a purchaser at execution
sale, who is unaffected with notice of the defect in the execution, cannot be
defeated upon the ground that the execution was irregular and defective, and
therefore voidable : and hence, a sale of land made under an execution issued
and tested after the defendant's death, and without *scire facias,* and revivor
against the heirs, will not be set aside at their instance, if no other cause be
shown than that the execution was voidable. See 8 J. R. 361 ; 16 Ib. 537 ; 1
Cow. 737 ; 6 Iredell, 288 ; 9 S. & M. 218.
7. SAME : SAME.—A court of equity will not set aside a sale of realty made under

an execution issued and tested after the death of the defendant, merely be-
cause the heirs had no notice of the judgment, if it appear that it was unsatis-
fied and a valid claim against the defendant, and that no injustice or injury
has been done to the complainants.

APPEAL from the Superior Court of Chancery. Hon. Charles
Scott, chancellor.

*George L. Porter*, for appellant.

This is an appeal from an order overruling the demurrer of
Harper, to the bill of Sarah Shields, Susan P. Hill, and Edwin
Moody.

The bill shows that Harper purchased certain lots under execu-
tion against John Shields; that he instituted an action of ejectment
against Moody, who "was in possession of said lots under what he
supposed was a good title to the same." That Harper recovered a
judgment, and an *habere facias* will issue. That, since the rendi-
tion of the judgment, complainants Shields and Hill "have placed
said Moody in possession of said lots, and authorized him to defend
the possession of the same conjointly with them, under their title
as the heirs-at-law of said John Shields."

In plain English, the case is, that Moody was in possession at
the date of the ejectment suit, claiming title as owner, holding ad-
versely to his co-plainants and all the world. As such owner, he
defended the suit brought by Harper as purchaser of the title of
Shields, and now, when cast at law, he turns and contrives a plan
to retain possession under the supposed claim of the heirs of Shields.
It is quite plain that such a pretence would be utterly destitute of
equity, even if the heirs of Shields had title. A party in posses-
sion will not thus be permitted to defeat a recovery against him;
nor can a third party, who has chosen to lay by and not sue, be
thus permitted to collude with the wrongful holder, and defeat a
recovery against him. If Mrs. Shields or Mrs. Hill had title, they
might have sued Moody at any time, and may sue Harper when he
recovers possession; but the fact that they have not sued the ad-
verse possessor, and Harper has recovered against him, creates no
equity on which they may resort to Chancery for trial of conflicting
legal titles. *Anderson v. Roberts*, 18 Johns. 535. If they have a

meritorious case, they must resort to the law court, and stay the proceedings in ejectment. So long as the writ remains unexecuted, the Circuit Court has full control of its process, and will prevent all abuse of it. If necessary, it may set aside the judgment, and permit Mrs. Hill and Mrs. Shields to defend. *Howard* v. *Kennedy's Executors*, 4 Ala. 592; Adams on Ejectment, 225, 232.

But Mrs. Shields and Mrs. Hill can have no relief in equity, even if under other circumstances they might obtain it, because they show no excuse for not defending at law. They do not pretend that they were ignorant of the ejectment suit, nor do they suggest any reason why they did not apply for leave to defend that suit; and it is plain that the whole matter of their alleged title was admissible, and was in fact offered in defence of the suit by Moody.

These reasons are conclusive of the whole case; but it may not be useless to inquire what sort of title these heirs have to the lots.

The first allegation is, that Harper purchased after a previous levy and sale, under execution upon the judgment, and complainants would have the court infer that the judgment had been satisfied. The charge is, that eight slaves had been levied on under the previous execution, and sold for more than enough to satisfy the judgment; and that the sheriff returned the execution and held the money subject to the order of court. They charge that the court did not appropriate the money, and so they say the execution was satisfied. But they file a transcript of that case as an exhibit; and that shows that the money was applied to other *fi. fas.* With this fact shown by their transcript, complainants do not, and dare not, assert that the money was not so applied, or that it was improperly applied, and the presumption is that the sheriff did his duty. In view of such a fact produced by themselves, it is absurd for them to insist that the judgment was satisfied merely because the court made no order. They are bound by the uncontradicted recitals of their exhibits, and the presumption it furnishes stands against them. If the sheriff had in fact applied the money to a wrong execution, it would not have affected this sale.

The second, and only other ground alleged is, that Shields was dead at the date Harper purchased, and the judgment had never

been revived; and this surpasses all absurdities ever suggested as a ground for equitable relief. If a *sci. fa.* had issued, the only available defence for the heirs of John Shields would have been a payment or release of the judgment; and they come into equity insisting on the want of this formality, when there is no pretence that they have been at all damnified by the omission. They do not pretend that there was, in fact, any money ever applied, before that paid by Harper, to the satisfaction of the judgment. They do not even say that the slaves were not also sold, as the fact was, under the very executions to which the money was applied.

It is vain to insist that the sale without revivor was void, for the decisions are to the contrary. Equally vain is it to insist that a sale under a voidable execution may be set aside in equity. A court has entire control of its own process. A voidable execution may be quashed at or before the return term; and, within the like period, any proceedings had under it may be set aside by the court from which it issued; but, after return term elapsed, the whole matter is final and conclusive. A court of chancery never has restrained, and, I venture to say, never will restrain, process at law, upon the mere ground that it is voidable; and there is no pretence for interference after return term, for the writ and proceedings under it then become valid and effectual, as if there had been no objection to the process.

So far as the sale depended on the validity of the writ, the question was purely matter of law; and the court of law has declared it legal and valid, notwithstanding the want of revivor. Can there be a pretence that this legal question, the effect of the non-revivor, may be overhauled in equity, and annulled upon the ground that the rule of law is wrong? The idea is absurd.

The demurrer should be sustained, and bill dismissed.

*Freeman* and *Dixon*, for appellees.

Appellant's counsel contest the case, upon the ground that the Chancery Court has not jurisdiction, but that same vests in the Circuit Court, which has full power to control its process, and will prevent all abuse of it; that that court has power to set aside the writ of *habere facias*, and admit Mrs. Hill and Mrs. Shields to defend their title and possession.

Harper *v.* Hill et al.

That court may have all this power; but does that close the doors of a court of equity to restrain the process of the Circuit Court, that has been obtained in fraud of the law, by collusion and abuse of the process of the courts? The bill distinctly charges that the judgment, under which Harper purchased, had been satisfied, by sale of property, more than sufficient to satisfy the judgment; that, notwithstanding this, Harper had fraudulently procured another execution to be issued, and purchased the lots in question for a nominal price. To contend that a court of chancery has not jurisdiction of such a case, in retort upon counsel, is the essence of absurdity; and, to quote authorities to sustain it, is worse, especially those inapplicable. *Vide* 18 Johns. 535.

It is also said that defendants, Hill and Shields, can have no relief in equity, because they did not defend at law. They were not required, by the process of the Circuit Court, to defend the ejectment cause by appellant; and were not bound to defend their property, unless in danger imminent, which arose only upon the result of that cause. Moody was not bound to purchase their superior legal title at any particular point of time; but it was his right, being in possession under color of title, at any time he pleased, to buy in a superior outstanding title, to defeat that set up by Harper, either before or after the trial of the ejectment suit. If his title is superior, it cannot affect Harper's right when he came into the possession of it.

But did Harper get any title, by his purchase at execution sale, which could avail against the rights of Mrs. Hill and Shields? The bill shows that they were the heirs-at-law of John Shields, against whom the execution ran; that Shields was dead; and that the execution, under which Harper purchased, was dated and tested after the death of Shields without having been revived against his heirs. This state of case, this court, in the case of *Doe ex dem. Shelton* v. *Hamilton*, 23 Cushman, 496, was certainly voidable, and may be so declared in direct proceedings by the heirs to so declare it.

In this case, upon the issuance of the execution at law against Shields after his death, the heirs of Shields and their estate were intended to be charged with its payment; and they were entitled to notice of the proceeding. When a new party is to be charged

or benefited by the execution of a judgment, when the defendant has died, such new party has the right to be heard; and, to this end, a *sci. fa.* is necessary before his interest can be affected; that, as to him, the process, and all title acquired under it, is absolutely void, for he was entitled to notice. *Smith* v. *Winston*, 2 How. Miss. Rep. 601, and cases cited.

This is a direct proceeding, to attack and set aside the sale to Harper, under a voidable process, and brought by the heir and terre tenant conjointly; and the case is sustained in every point by the decision of this court in the case of *Hamilton* v. *Shelton*, 23 Miss. Rep. 496, cited before; and that case also, is conclusive, upon the argument of Mr. Potter, that either the terre tenant or the heir may have had relief in a court of law. It decides, beyond contradiction, that such defence could not be set up collaterally.

Upon a review of that case, and the cases there cited, we have no doubt of the action of this court in sustaining the chancellor in overruling the demurrer.

SMITH, C. J., delivered the opinion of the court.

This was a bill filed in the Superior Court of Chancery. The object of the suit was to restrain process at law; to set aside a sale of certain real estate made by the sheriff of Hinds county; and to have the deeds made to the purchaser declared void, and delivered up for cancellation.

The facts alleged in the bill are substantially as follow: A judgment, on a forfeited forthcoming bond, was entered against John Shields and others, at the November Term, 1837, of the Circuit Court of Hinds county; upon which, on the 13th of February, 1838, execution issued, and was levied on certain slaves, the property of the principal in the bond. The slaves thus levied on were sold at public auction by the sheriff, and brought the sum of $2530. No application of this sum was made by the sheriff in satisfaction of the execution, but held by him "subject to an order of court." No order was made by the court appropriating the money to the payment of any other judgment or execution; and hence it was charged, that the execution in question was satisfied.

At the instance of the defendant, Harper, several executions in succession were issued upon said judgment thus alleged to be satis-

fied.   The last of these executions was issued on the 12th of January, 1844; and, on the same day, was levied upon certain lots, described as lots one, two, seven, and eight, in the city of Jackson, the property of the said Shields.   These lots were sold, under the execution, on the 19th of February, 1844, and were bid off by defendant, to whom a deed for the same was executed by the sheriff.

Shields died, in 1839, seised and possessed, in fee simple, of the said property; leaving the complainant, Mrs. Shields, his widow, and the complainant, Mrs. Hill, his daughter and only heir-at-law. The judgment, upon which the execution issued under which the sale was made, was never revived against these complainants, who at the date of the sale had no notice whatever of its existence.

The defendant commenced an action of ejectment in the Hinds Circuit Court against the complainant, Moody, " who was in possession of the said lots under what he supposed to be a good title," and at the March Term of said court recovered a judgment against said complainant, and threatened to sue out a *habere facias possessionem*, in order to turn him out of possession.

The complainants, Mrs. Shields and Mrs. Hill, since the rendition of the judgment in the ejectment suit against said Moody, have placed him in possession of the said lots, and " have authorized him to defend the possession thereof *conjointly* with them under their title as heirs-at-law of said Shields."

The bill charges that the sale of the said lots was fraudulent and void, and conveyed no title as against the complainants; and prays for an injunction to restrain the issuing of a writ of possession upon the judgment at law; that the said sale be set aside, and that the sheriff's deed for the lots, to the defendant, be delivered up to be cancelled. ·

A demurrer for want of equity in the bill was filed by the defendant, which was overruled and an appeal taken to this court. Our inquiries, therefore, are limited to the question, whether, upon the case made in the bill, the appellees are entitled to relief.

The appellant, in an action of ejectment, recovered a judgment against the complainant, Moody, for the lots in controversy. Moody, according to the statements of the bill, was in possession, when the recovery was had, under a title which he supposed to be a good one.   The title, therefore, under which he held possession,

and upon which, we may presume, he defended in the suit at law, was adverse, not only to the title of the appellant, but also to that which Mrs. Shields and Mrs. Hill now assert.   If the sale of the lots was void for the causes assigned, and therefore, as it is alleged, ineffectual to pass the title, it is manifest that the paramount title was vested in these parties.   For this reason, it is clear, that they had'it completely in their power to recover possession by ejectment against Moody, or against the appellant, in case the former was turned out, and the latter let into possession.   The title of these parties was in no respect involved, and therefore, could in nowise be affected by the recovery in the ejectment suit.   They were not, and do not claim to have been, in possession when the recovery was had.   And, having no interest in that controversy, it does not admit of question, that, at their solicitation, a court of equity has no authority to interpose between the parties thereto, for any purpose whatever.

In reference to the complainant Moody, there is not even a pretence, based upon his own title, that he has a right to the equitable assistance or protection of the court.   In fact, he sets up no title, either legal or equitable, in himself.   Most clearly, therefore, the mere fact that he was placed in possession by his co-complainants, after the judgment at law, did not confer upon him, individually, or upon all the complainants jointly, a right to claim the intervention of a court of equity, in order to restrain the execution at law. If the transaction were the reverse of that which is alleged; if the bill showed that Moody had delivered the possession to his co-complainants, instead of having received possession from them, some color, upon the allegation that they were the owners of the paramount equitable title, might be given to the pretension set up by the bill, that they are entitled to be protected in such possession, until a final adjudication, upon the merits of the claim, were had. As the case is presented, however, it is evident that the introduction of Moody as a party complainant, has in no respect strengthened their claim to any relief whatever.   Indeed, so far as Moody is concerned, and so far as the bill seeks to restrain the execution at law, the transaction amounts to nothing more than an effort, on his part, by setting up the outstanding title of his co-complainants, to defeat the recovery against him, and thus to be continued in the

Harper *v.* Hill et al.

possession, without the assertion of any title thereto, either legal or equitable, in himself.

If we are correct in these views, it follows, necessarily, that a court of equity could not, rightfully, interpose between the appellant and Moody, for the purpose of restraining the process in the action of ejectment.

We will next examine the main question raised by the demurrer: that is, whether, upon the case made by the bill, the appellees are entitled to a decree vacating the sale and annulling the sheriff's deed to the appellant ?

In support of the decree, it is contended that the sheriff's sale was illegal and void, and consequently that his deed to the purchaser was a nullity: 1. Because the execution, under which the sale was made, was issued upon a satisfied judgment; and, 2. Because Shields, the owner of the property, was dead when the execution issued. The judgment never having been revived against the heirs and *terre tenants.*

1. In reference to the satisfaction of the judgment, the statements of the bill are, that the execution which issued upon it, in 1838, was levied upon certain slaves, the property of the principal in the forthcoming bond, which were sold in virtue of said execution ; that the proceeds of the sale were not applied by the sheriff to the payment of the same, but were held subject to an order of the court ; and that no order was ever made appropriating the proceeds of said sale to "the payment of any other judgment or execution." Upon this ground, and for this reason, it is charged that the "said execution was paid and satisfied."

But by reference to the transcript of the record in that case, which was referred to in the bill, and made a part of it, it appears distinctly that the proceeds of the sale, under the execution in question, were not applied to the satisfaction of the same, but that they were appropriated, by order of court, to the satisfaction of other executions. This statement, contained in the exhibit, is not explained or rebutted by any allegation or statement of the bill. It must, therefore, be held conclusive, that the money, the proceeds of the sale, was not, in point of fact, applied to the payment of the execution. For the same reason, it must be held conclusive, that the proceeds of the sale were appropriated in payment of other

executions.   The principle applies here, which prevails in all cases where the action of courts and the conduct of officers are in question, that is, that they have acted correctly, unless the contrary is shown.   The presumption therefore exists, that the proceeds of the sale were legally and properly applied.   It follows, hence, that the inference on which the charge in the bill was based, that the execution was "paid and satisfied," was unfounded, and did not exist as matter of fact.

2. It has been repeatedly held by this court, that an execution, issued and tested after the death of the defendant, without a revival of the judgment, is not for that reason void, but only voidable.   *Smith & Montgomery* v. *Winston & Lawson*, 2 How. Miss. Rep. 601 ; 9 S. & M. 216–18 ; *Doe ex dem. Shelton* v. *Hamilton*, 23 Miss. Rep. 497.

The execution, therefore, under which the sale in this case was made, was not absolutely void, but only voidable.   And it has been uniformly holden that an execution which is not absolutely void, but only voidable, is valid until avoided.   9 S. & M. 216, 218.

In *Smith & Montgomery* v. *Winston & Lawson*, quoted above, it was said " the sale, made, as it was, without a revival, was not however void, but only voidable.   It was good until regularly set aside, which cannot be done in this collateral manner."   And in *Doe ex dem. Shelton* v. *Hamilton*, quoted also, it was held that a sale of land made under an execution which was not void, but only voidable, was good, and could only be set aside by a direct suit for that purpose by the heirs or *terre tenants*.

These cases, and all the authorities, recognize the distinction between the execution and a sale made under it.   A voidable execution, as the term imports, is one which, upon a proper proceeding for that purpose, may be quashed or avoided.   But before that is done, as the execution is deemed valid, a sale made under it passes the title, and a stranger who purchases will be protected.

It follows, hence, necessarily, that the title of a purchaser at execution sale, who is unaffected with notice of the defect in the execution, cannot be defeated upon the ground that the execution was irregular and defective, and therefore voidable.   *Jackson ex dem. McCrea* v. *Bartlette*, 8 J. R. 361 ; *Jackson* v. *Robins*, 16 Ib.

537; *Woodcock* v. *Bennet,* 1 Cow. R. 737; 6 Iredell, 288; 9 S. & M. 218.

When, therefore, it was said, in *Doe ex dem. Shelton* v. *Hamilton,* that a sale of land under a voidable execution was good until regularly set aside, and that a direct suit for that purpose, by the heirs or *terre tenants,* was the only mode in which it could be done, this court is not to be understood as laying down the rule that an irregularity or defect which would not render an execution void, but for which it might have been avoided, constitutes of itself ground upon which, in a direct suit for that purpose, a court of law or equity could avoid a sale made under it. The principle announced was applicable to the case then under consideration. A principle which prevails, generally, in regard to the judgments and proceedings of all courts, and equally applicable to a sale, or title acquired under an execution, unquestionably valid, as to a sale made or title derived under a voidable execution.

The fact, then, that the sale was made in virtue of an execution not void, but only voidable, constitutes no independent ground for relief, it remains to be seen whether the case contains any other ingredient upon which the relief prayed for may be granted.

Want of notice of the judgment against Shields, and of the execution sale, and the consequent injustice and injury suffered by the heirs, are relied on.

The proceeds of the execution sale were not, in point of fact, applied in satisfaction of the judgment, but were appropriated, under order of court, to the payment of other judgments and executions against the principal in the forthcoming bond. The presumption exists that said appropriation was proper and legal. Hence no wrong or injustice was thereby inflicted upon Shields or any party to the execution.

It is not alleged that Shields or the appellees paid the judgment. It is not pretended that the judgment was discharged, paid, or satisfied in any way whatever, except by the sale made under the execution. How, then, can it be maintained that the appellees were damnified by want of notice? The proceeding by *scire facias* is intended as notice to a party to show cause why an execution should not issue, and to give him an opportunity to plead a payment or any other discharge. The record shows that neither pay-

ment nor other discharge could have been pleaded by the appellees, in case a *scire facias* to revive the judgment had been sued out. Hence a *scire facias* would not have availed them. They were, therefore, not injured by the want of notice; and as it is not charged that the sale was fraudulent, they have no just ground of complaint.

We are, therefore, of opinion that the demurrer should have been sustained.

Decree reversed and bill dismissed.

NOTE.—This case was decided at the April Term, 1856, and omitted, by mistake, to be reported among the cases of that term.