COCKE & JENKINS *v.* H. S. FOOTE, ADM'R, *de bonis non.*

1. CHANCERY COURT—INSOLVENT ESTATE—Where F. as adminstrator, *de bonis non,* of S., reported the estate insolvent, and proceeded to settle up the estate, (and as he thought,) finally administered the same, but omitted to administer a certain tract of land ; and R. who had recovered a judgment against the former administrator, sued out a *fi. fa.* and had the land sold by the sheriff, *Held:* that the proceedings and sale were irregular and illegal, and that the sheriff's deed conveyed no title to the purchasers. The judgment creditor should have revived against the administrator, *de bonis non,* and proceeded according to the mode prescribed by law,

Appeal from the chancery court of Holmes county, Hon. J. J HOOKER, Chancellor.

Ricks had a judgment in the circuit court of Madison county, against Griffin, administrator of Skidmore. After the rendition of this judgment, Griffin was discharged from the administration, and H. S. Foote, was appointed administrator, *de bonis non*, of Skidmore. Upon representation of Foote the estate of Skidmore was duly declared insolvent, and proceeded with to settlement, as such, and *pro rata* distribution was made among creditors, and Foote discharged from the administration. Afterwards, and when there was no representative of the estate, execution was issued on the judgment of Ricks against Griffin, and directed to the sheriff of Holmes county, levied on certain land, part of a sixteenth section in that county, owned by Skidmore in his lifetime, which was sold and purchased by appellants. Thereupon, Foote, former administrator, *de bonis non*, made application to the proper court for a re-grant of letters of administration on the estate of Skidmore, because of the newly discovered assests, consisting of this land in Holmes county, of which he knew nothing before. Letters were granted to him, and he exhibited his bill in the chancery court of Holmes county, (where the land lies, and where defendants resided,) against Ricks and Cocke & Jenkins, who purchased under the execution, to vacate the sale and clear the title from clouds, preparatory to obtaining an order of sale of the land for *pro rata* distribution among creditors.

The judgment of Ricks was never recorded on the judgment roll in Holmes county, and was, therefore, never a lien on property in that county.

This is a fair statement of the case made by the record.

The decree was in accordance with the prayer of the bill, and from this decree, defendants appealed.

The following is assigned for error :

1. The court erred in overruling demurrer of Appellants to the bill.

2. The court erred in rendering a decree canceling the deed of the sheriff to Cocke & Jenkins for the land named in the bill.

*Shelton & Shelton,* for appellants :  ·

Complainant was right in treating the leasehold as personal property.   34 Miss., 527.

He might have gone further and asserted that it could be levied on and sold under judgment and execution against an administrator, for such is the established law in this State. 7 S. & M., Rep., p. 479 ; 42 Miss. Rep., 465.

The judgment could not be revived against the heirs or terre-tenants of the land, because : 1.   Only a judgment against the deceased in his life-time can be revived against them, not a judgment against an administrator to be levied of the goods and chattels in his hands to be administered. 2.   Because the leasehold being personalty and not realty, did not descend to the heirs, but passed into the hands of the administrator, to be administered. 41 Miss., 38 ; 42 Miss., 420 ; 43 Miss., 161 ; 3 S. & M., 606.

Where, therefore, the judgment was rendered against Griffin, executor, it was emphatically, a judgment against the property included in the leasehold, and when the original execution was issued while Griffin was executor, it commanded a levy on the leasehold.   The *fi. fa.* was not levied ; Griffin resigned ; Foote became administrator, *de bonis non cum testamento annexo,* and settled up the administration on

all the goods that came to his hands, in full. This leasehold was never administered or sold.

But plaintiff in execution, after Foote's final discharge, issued execution against the estate of Skidmore, which was levied on the leasehold, sold, and bought by Cocke & Jenkins. Foote afterwards took out new letters of administration, and filed this bill to set aside that sale and the deed of Cocke & Jenkins. There is a charge of fraud, or pretense, that the sale and purchase was not made in good faith, and paid for. No charge of actual notice to Cocke & Jenkins of the condition of Skidmore's administration.

Even if the administration proceedings had been going on in Madison county all the time Cocke & Jenkins purchased, they would not be chargeable with the value thereof, for a purchaser, *pendente lite*, is bound by the decree only when title is adjudicated, or a party enforces a subsisting incumbrance, on *specific property*. This principle is applied for the protection of a purchaser, *pendente lite*, against a creditor's bill to vacate a fraudulent conveyance. See 31 Miss. Rep., 65; 33 Miss. Rep., 65; 5 How. Rep., 548; 9 S. & M., 216; 2 How. Rep., 601; 37 Miss., 481; 36 Miss., 689–90.

*J. A. P. Campbell,* for appellee:

There is no analogy between this case and that of a judgment against one, who dies, upon which execution is issued without revival—in that, the judgment is a lien on the property of defendant, unaffected by his death, and execution is merely to make effectual the lien. In such case the execution is held to be merely voidable, and not void. But even in that case, it may be avoided in a direct proceeding for that purpose in equity by the heir, who need not offer by his bill to refund the amount of the purchaser's bid; and the purchaser will not be entitled to a decree for repayment, unless the judgment was a lien, and he a purchaser in good faith, without notice of the irregularity. Cook et al. v. Toombs, *36 Miss.* 685.

In the case at bar, the judgment was not a lien on the

property sold, for the judgment was rendered in the circuit court of Madison county, and the land is in Holmes county, and no abstract of the judgment was recorded in Holmes. The purchasers were chargeable with notice of all that the records of Madison show, and they show that the judgment was against John W. Griffin, administrator, etc., and that he had been remanded for the administration, and that H. S. Foote, jr., had been appointed administrator, *de bonis non*, and that the estate had been duly declared insolvent, and that Foote had made a final settlement, and been discharged. Thus, when this insolvent estate had no representative, and execution was proved against a former administrator, and a levy made on property, the title to which, at the time, was *in nubibus.* It is as though the property of A. should be sold under execution against B., which would convey no title to the purchaser. That this estate had been duly declared insolvent is decisive of the invalidity of this execution. The effect of a declaration of insolvency is to transfer executive jurisdiction over the estate to the court having probate jurisdiction. Parker v. Whiting, 6 How. 352; Dye's, adm'r, v. Bartlett, 7 How., 224.

It has been held that a *levy made* before declaration of insolvency is good. Bass v. Heard, 33 Miss., 131; Trotter v. Parker, 38 Miss., 473. By implication, a levy after declaration of insolvency, is bad.

In this case great wrong has been done. Property worth thousands of dollars, which belonged to creditors *pro rata*, but had been overlooked by the administrator, was seized at a time when there was no representative of the estate, and sold for the paltry sum of eighty dollars, to persons who had constructive notice, by record evidence, of all these facts. The administrator, who in ignorance of this property as assets, had made final settlement, applied anew for letters of administration, obtained them, and as the representative of creditors, exhibited his bill to vacate the sale in order to clear the title, and be in position to obtain an order of the

sale of this land for *pro rata* distribution of the proceeds among creditors. The purchasers are not in the position of *bona fide* purchasers for value without notice. They got the title Griffin had at the time of the levy of execution (there was no lien before) and that was wanting, for he had ceased to be administrator, and the title had vested in Foote, who had been discharged, and at the time of levy the title was *in nubibus*. Kelly v. Mills, 41 Miss., 267. If the court reverses the decree, let the case be remanded, and it can be made to appear affirmatively that this execution was procured by the very men, who purchased under it for the purpose of speculation, and that they knew all about the facts.

Tarbell, J., delivered the opinion of the court:

C. S. Skidmore died testate in 1862, having, by his will, appointed John W. Griffin, and ——— Carraway his executors. In October of that year, letters testamentary were granted by the probate court of Madison county, where the will was probated, to John W. Griffin, as executor, who qualified as such. In September, 1866, Benjamin S. Ricks recovered judgment, in the circuit court of Madison county, against the said John W. Griffin, as executor, etc., for upwards of $16,000.00. The letters testamentary of Griffin were revoked in November, 1866, when he ceased to be executor, etc. Administration was granted to H. S. Foote, jr., in December thereafter, and in May, 1867, the estate was declared insolvent. Settlement proceeded accordingly, and Foote was discharged from his administration in March, 1869. In April, 1871, while there was no representative of the deceased, Ricks sued out an alias *fieri facias*, to enforce his judgment, directed to the sheriff of Holmes county, commanding him " of the goods and chattels, rights and credits of C. S. Skidmore, deceased, in the hands of John W. Griffin, administrator, and others, to cause to be made the said sum" of $16,000.00, " to satisfy said judgment." This execution coming to the hands of the sheriff of Holmes county, was levied upon several lots of land, in that county, as the

property of C. S. Skidmore, deceased, in the hands of his executor, unadministered. These lands were sold by the sheriff, in August, 1871, to John G. Cocke and Wellington Jenkins, plaintiffs in error, for the sum of $80.00, that being the highest sum bid, and at the same time executed to them a deed thereof. H. S. Foote, jr., was appointed administrator, *de bonis non*, etc., of C. S. Skidmore, deceased, in October, 1871, and upon his motion the above execution was quashed at its return term by the proper court. The land above mentioned, and in controversy, is a part of a sixteenth section of school lands, and held, by lease, for ninety-nine years, the estimated value being about $3,000, while the indebtedness of the estate of Skidmore exceeds that sum and all the assets of the estate by many thousands. Upon this state of facts H. S. Foote, jr., administrator, etc., filed his bill of complaint in the chancery court of Holmes county, praying that the deed of the sheriff to Cocke & Jenkins, be canceled, and the land restored to him, to sell for the benefit of creditors of the estate. The sheriff's deed is claimed to be a cloud upon the title, impairing its value for sale; and it is averred that this land was overlooked by, and unknown to the administrator, until subsequent to the sale by the sheriff, as above set forth.

Cocke, Jenkins & Ricks were made defendants. Neither bad faith nor knowledge of the facts above stated, are charged upon these parties. There was a demurrer, stating for cause, that the *fi. fa.* was an *alias,* issued out of the proper court, upon a judgment against the executor named in the writ; that there was no offer to return the money paid by the purchasers; that the defendants had no notice of the motion to quash the writ of execution; that the writ was not void; and that the land was only lease-held. This demurrer was overruled, and the defendants answered. No issue is made by the answer, the allegations of the bill being substantially admitted; but it is stated, as a reason why the land brought no more than $80.00, that a suit was pending to enforce a lien for the purchase money, or price agreed to

be paid for the lease, secured by note, to the proper school officers, who made the sale. Ricks did not appear, and a *pro confesso* was taken as to him. A stipulation, signed by the respective counsel, waives proofs and agrees on the facts as above. The decree of the Chancellor was in accordance with the prayer of the bill, and the defendants, Cocke & Jenkins, appeal to this court. In brief, there was judgment against Griffin, executor. He resigned his executorship, and Foote was appointed administrator, etc., when the estate was declared insolvent. Foote was discharged, after having administered, as was supposed, upon the entire estate. In this condition of the estate, Ricks caused execution to be issued on his judgment, requiring the sheriff to sell property in the hands of Griffin, executor, etc. Upon this execution. leasehold property claimed to be worth several thousand dollars, was sold for $80.00. The complainant avers that this property was unknown to him until the sale by the sheriff to Cocke & Jenkins.

The following are believed to be correct legal propositions, and that by them the case under consideration must be determined :

1. This property belonged to the administrator. The declaration of insolvency passed title absolutely. Code of 1871, §§ 1134, 1158; 2 How., 601.

2. It mattered not that it had not been inventoried. If unknown or accidentally omitted, it was the duty of the administrator to return it when discovered, and of the court to order it to be included, when brought to its knowledge. Code of 1871, § 1133.

3. So long as there was property unadministered, Foote was probably not legally discharged from further administering, though this view is somewhat speculative in the absence of all the facts, and not essential.

4. The judgment against Griffin should have been revived against his successor. Code of 1871, § 1182.

5. The purchasers acquired only the interest of Griffin, which was nothing. They were chargeable with at least

constructive notice of the condition of the records in Madison county.

6. Title was in Foote, or, in abeyance.

7. The facts are exceptional, and the cases cited of title passing in virtue of sales under voidable executions, are not considered analogous. We are aware of no case like the one at bar. The cases cited are of judgments against the deceased in his life time, with executions *bearing teste* after his death. Hence the distinction. 7 How., 224; ib., 256; 9 S. & M., 216; 35 Miss., 63, and cases cited therein; 6 How., 352.

An examination of the case of Parker, administrator, v. Whiting's administrator, 6 How., 352, shows it to have been in many respects like the one under consideration. There was judgment, in 1840, against an administrator, execution against the party defendant in the judgment, and levy on property in his hands, but no sale took place; an alias execution was issued returnable to May term of the proper court, 1841; this execution was superceded on the ground that, in March preceding (1841), the estate of which the defendant in the execution was the representative, had been declared insolvent. The opinion of the court in that case was delivered by Ch. J. Sharkey, and the reasoning tends strongly, if not conclusively, to uphold the decree in the case at bar.

But it is provided by § 1163, Code of 1871, incorporated from prior statutes, that, "no suit or action which may be pending against an executor or administrator at the time the estate is reported insolvent, shall, on that account, abate, but may be prosecuted to final judgment; and the judgment shall constitute a claim against the estate, though not registered as other claims, but shall have no priority over general creditors," etc. In the case now quoted from it is said, "there is no provision as to judgments recorded upon the report of insolvency, and yet it must be manifest that such a case falls within the spirit of the statute so as to prevent the plaintiff

from making his judgment effectual, by having it executed after a report of insolvency. To prosecute his execution is in effect to prosecute a suit. If, then, an estate is reported insolvent after judgment and before execution executed, it is competent for the court from which the execution emanated to stay the execution in the same manner that it would stay an execution in a suit brought before, and judgment recovered, after insolvency under the last mentioned act. The judgment lien is then held in abeyance, or must give way to the general and equal liens of all the creditors; for they all become equally entitled to their respective shares of the proceeds the moment an estate is reported insolvent." In the case cited, the execution was against the administrator, who was defendant in the judgment, and it was levied upon property in his hands in fact, but there was no sale. While in the case at bar, the defendant in the judgment had ceased to be executor when execution was issued against him, and executed without revival against the successor in the administration. There is also this further consideration in this case, that the purchasers at sheriff's sale are fairly chargeable with notice, by construction, of the condition of the records in Madison county.

We are of the opinion that the justice and equity of this case are with the complainant, and we so decide, as we think, *ex equo et bono*, upon the case made by the record.

*Decree affirmed.*